UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NUMBER: ______________

COMERCIALIZADORA TRANSPACIFICO, S.A.,
A Panamanian company,

Plaintiff,

v.

STEVEN TERNER MNUCHIN,
Secretary of the Treasury, UNITED
STATES DEPARTMENT OF THE
TREASURY; JOHN E. SMITH, Director
of the Office of Foreign Assets Control;
and the OFFICE OF FOREIGN
ASSETS CONTROL, United States
Department of the Treasury,

Defendants.
________________________________/

**COMPLAINT**

Plaintiff, COMERCIALIZADORA TRANSPACIFICO, S.A., ("Plaintiff" or "COMERCIALIZADORA TRANSPACIFICO"), by and through its undersigned counsel, sues the Defendants, STEVEN TERNER MNUCHIN, Secretary of the Treasury, UNITED STATES DEPARTMENT OF THE TREASURY, JOHN E. SMITH, Director, Office of Foreign Assets Control, and OFFICE OF FOREIGN ASSETS CONTROL ("OFAC"), United States Department of the Treasury, (collectively, the "Defendants"), and in support thereof, COMERCIALIZADORA TRANSPACIFICO, states as follows:

## PRELIMINARY STATEMENT

1. This is an action seeking judicial review of administrative action, and for declaratory, injunctive and mandamus relief from Defendant's refusal to issue a license or other administrative relief.

2. The statute pursuant to which the Defendants have acted and are acting in this case is the Foreign Narcotics Kingpin Designation Act ("FNKDA"), 21 U.S.C. §§1901-1908. FNKDA was enacted on December 3, 1999, as Title VIII of the Intelligence Authorization Act for Fiscal Year 2000, Pub. L. No. 106-120, 113 Stat. 1606, (1999).

3. Through this action, COMERCIALIZADORA TRANSPACIFICO seeks a decision from this Court ordering Defendants to unblock funds currently held at Morgan Stanley because Defendants have violated the Foreign Narcotics Kingpin Designation Act ("FNKDA"), the Administrative Procedure Act, and the Due Process Clause of the United States Constitution.

4. Specifically, COMERCIALIZADORA TRANSPACIFICO requests the release of one (1) outgoing funds transfer (the "Blocked Transfer") in the amount of $500,000.00 (the "Funds") that was mistakenly originated from COMERCIALIZADORA TRANSPACIFICO's account with Morgan Stanley Inc. ("Morgan Stanley") in favor of Capitales Transpacifico, S.A.'s (the "Mistaken Beneficiary") account with Banco Transatlantico, S.A. ("Banco Transatlantico") due to human error on the part of COMERCIALIZADORA TRANSPACIFICO and mistaken identity relating to Nautikos Corporation (the "Intended Beneficiary").

5. As described in greater detail below, COMERCIALIZADORA TRANSPACIFICO intended to send the Funds to the Intended Beneficiary, but due to human error, COMERCIALIZADORA TRANSPACIFICO provided incorrect payment instructions to Morgan Stanley relating to the Blocked Transfer referring to the Mistaken Beneficiary. Attached hereto as Exhibit A is a general description of the Blocked Transfer.

## PARTIES

6. Plaintiff COMERCIALIZADORA TRANSPACIFICO is a Panamanian company with its principal office for the performance of its usual and customary business located in Marbella, Panama.

7. Defendant Steven Terner Mnuchin is the Secretary of the Treasury of the United States. He has ultimate authority over the decisions made in this case.

8. Defendant United States Department of the Treasury is the agency assigned the responsibility by Congress for administration of the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§ 1901-1908, 8 U.S.C. 1182, and is the agency which promulgated the Foreign Narcotics Kingpin Regulations, 31 C.F.R. Part 598.

9. Defendant John E. Smith is the Director of the Office of Foreign Assets Control ("OFAC"), which is the office within the United States Department of The Treasury that has direct responsibility for the administration of the above-described statute and regulations, and which makes the day-to-day determinations under those statutes and rules on behalf of the Secretary of the Treasury.

10. Defendant Office of Foreign Assets Control is the office within the United States Department of the Treasury that has direct responsibility for the administration of the above-described statute and regulations.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States Defendant), 28 U.S.C. § 1361 (jurisdiction to compel an officer to perform a duty owed to Plaintiff), 5 U.S.C. § 702 (Administrative Procedure Act waiver of sovereign immunity), and 5 U.S.C. § 704 (Administrative Procedure Act final agency action for which there is no other adequate remedy in court).

12. Declaratory judgment is sought pursuant to 28 U.S.C. § 2201 (creation of remedy) and 28 U.S.C. § 2202 (further relief).

13. Venue in Miami, Fiorida is proper pursuant to 28 U.S.C. § 1391(b) and §1391(e)(1)(A) because some of the United States Defendants reside in this district and pursuant to 28 U.S.C. § 1391(e)(1)(B) (a substantial part of the events giving rise to this claim occurred in this district and a substantial part of property that is the subject of the action is situated) because the Funds at issue are held at Morgan Stanley's Miami, FL branch and the witnesses from Morgan Stanley who communicated with COMERCIALIZADORA TRANSPACIFICO regarding the transfer of the Funds are located at this same branch in Miami, FL.

## JUDICIAL REVIEW

14. An applicant dissatisfied with OFAC's disposition of an application for a license may seek judicial review of the division in accordance with the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

15. As described herein, the continued retention of the blocked funds is not supported by law.

## BACKGROUND AND FACTS

**THE PLAINTIFF: COMERCIALIZADORA TRANSPACIFICO, S.A.**

16. COMERCIALIZADORA TRANSPACIFICO, a Panamanian Sociedad Anonima, was founded in March of 2016. COMERCIALIZADORA TRANSPACIFICO markets, distributes and provides various products and services to clients in the U.S., Canada, Mexico, and the Latin American region, which include the sale, resale or brokerage of maritime vessels, boats and automobiles. COMERCIALIZADORA TRANSPACIFICO is beneficially-owned 99% by Luis Molina Luis Gerardo Molina Tamayo ("Luis Molina"), a Mexican national and 1% by his brother Carlos Molina Tamayo ("Carlos Molina"), a Mexican national.

17. COMERCIALIZADORA TRANSPACIFICO has maintained an account with Morgan Stanley since 2016. This account is used primarily for business purposes. As discussed in greater detail below, on June 18, 2016, COMERCIALIZADORA TRANSPACIFICO inadvertently sent Morgan Stanley incorrect payment instructions for the transfer of the Funds. The Funds were supposed to be sent to the Intended Beneficiary, an entity that is not, and has never been, designated as a Specially Designated Narcotics Trafficker ("SDNT") pursuant to the Foreign Narcotics Kingpin

Designation Act (the "Kingpin Act") or any other OFAC sanctions program and which is not directly or indirectly owned fifty percent (50%) or more in the aggregate by one or more blocked persons under applicable OFAC regulations.[1]

**INTENDED BENEFICIARY: NAUTIKOS CORPORATION**

18. The Intended Beneficiary is the owner of the Vessel and other yachts/boats (as defined below). To COMERCIALIZADORA TRANSPACIFICO's knowledge, the Intended Beneficiary is a U.S. company and a member of the "Nautikos" group[2]. The Intended Beneficiary maintains an account at Bank of America, N.A. ("Bank of America"), and the Funds were intended to be sent to such account as discussed in greater detail below.

19. The Intended Beneficiary is not a SDNT or directly or indirectly owned fifty percent (50%) or more in the aggregate by one or more blocked persons.

**MISTAKEN BENEFICIARY: CAPITALES TRANSPACIFICO, S.A.**

20. COMERCIALIZADORA TRANSPACIFICO maintains no commercial relationship with the Mistaken Beneficiary. The Mistaken Beneficiary was once a prospective customer of COMERCIALIZADORA TRANSPACIFICO's beneficial owners for a transaction from several years ago (as evidenced by the fact that the payment information contained a reference to a bank that has not existed for several years) that never materialized and that is why COMERCIALIZADORA TRANSPACIFICO

---

[1] In August of 2014, OFAC issued guidance amending earlier guidance that had been issued in 2008. The revised guidance states that the property and interests in property of entities directly or indirectly owned fifty percent (50%) or more in the aggregate by one or more blocked persons are considered blocked regardless of whether such entities appear on OFAC's Specially Designated Nationals and Blocked Persons List or the annex to an executive order. This is commonly referred to as the "50% Rule."

[2] For more information, please visit: http://www.nautikos.com.mx/.

maintained payment information for the Mistaken Beneficiary. As discussed in greater detail below, instead of providing the payment instructions for the Intended Beneficiary, COMERCIALIZADORA TRANSPACIFICO provided payment instructions for the Mistaken Beneficiary to Morgan Stanley due to an unintentional, human error.

21. The Mistaken Beneficiary is not a SDNT or directly or indirectly owned fifty percent (50%) or more in the aggregate by one or more blocked persons.

**OPEN TELECOMUNICACIONES, S.A. DE C.V.**

22. Open Telecomunicaciones, S.A. de C.V. ("Open"), is a Mexican company that was founded in 2007. To COMERCIALIZADORA TRANSPACIFICO's knowledge, Open is beneficially owned by Jose Antonio Flores Pineda, a Mexican national. Open concentrates most of its commercial activities in the informational technology and software systems support sector, but also engages in some real estate activities. Open is not a SDNT or directly or indirectly owned fifty percent (50%) or more in the aggregate by one or more blocked persons.

23. As discussed in greater detail below, COMERCIALIZADORA TRANSPACIFICO was engaged by Open to locate the Vessel that COMERCIALIZADORA TRANSPACIFICO was ultimately going to acquire, on behalf of Open, from the Intended Beneficiary.

**BALBOA BANK & TRUST, CORP. AND BANCO TRANSLANTICO, S.A.**

24. Balboa Bank & Trust, Corp ("Balboa Bank") is a bank duly licensed and operating in Panama City, Panama. It was technically founded in 2002 as Stanford Bank (Panama), S.A. However, in March 2010, full control of shares of Balboa Bank were ceded to Strategic Investors Group, Inc., and in April 2010, the Superintendencia

de Bancos de Panama authorized the change of legal name to "Balboa Bank & Trust, Corp." It started business in May 2012 and in December 2012, it merged with Banco Transatlantico S.A. ("Banco Transatlantico"), with Balboa Bank remaining as the surviving entity. Balboa Bank concentrates its activities on international banking, offering savings accounts, checking accounts, time deposits, money market accounts, debit cards, trust services and credit cards for retail, corporate and private banking clients.

25. On May 5, 2016, Balboa Bank was designated a SDNT by OFAC pursuant to the Kingpin Act along with several other entities and individuals affiliated with the Waked Money Laundering Organization. This designation resulted in a run on Balboa Bank's deposits and an investigation as to whether Balboa Bank facilitated or participated in illicit transactions. Moreover, on the same date as the designation, the Superintendencia de Bancos de Panama assumed administrative control of Balboa Bank and, in addition to conducting the aforesaid investigation, was trying to protect and preserve the deposits of the many innocent accountholders that had been adversely impacted by Balboa Bank's designation.

26. Balboa Bank's designation as a SDNT is relevant in this case because, as will be discussed in greater detail below, COMERCIALIZADORA TRANSPACIFICO inadvertently and incorrectly instructed Morgan Stanley to send the Funds to the Mistaken Beneficiary's account with Banco Trasatlantico. The Mistaken Beneficiary is not a SDNT or directly or indirectly owned fifty percent (50%) or more in the aggregate by one or more blocked persons.

**THE BLOCKED TRANSFER**

27. In June of 2016, COMERCIALIZADORA TRANSPACIFICO was engaged by Open to locate a fifty-one (51) foot yacht manufactured by Ferretti (the "Vessel") which COMERCIALIZADORA TRANSPACIFICO would ultimately resell to Open as dealer. COMERCIALIZADORA TRANSPACIFICO identified the Vessel owned by the Intended Beneficiary and entered into an agreement with the Intended Beneficiary to acquire the Vessel for a purchase price of $1,100,000.00 (the "Purchase Price"). The Purchase Price was to be payable in two (2) installments, the first installment being $500,000.00 (the "First Installment") and the second installment subject to certain contingencies (including condition of the Vessel ultimately located). Please refer to Exhibit E for supporting documents (in Spanish with English translation added).

28. Pursuant to the terms of the COMERCIALIZADORA TRANSPACIFICO's arrangement with Open, Open would pay the Purchase Price to COMERCIALIZADORA TRANSPACIFICO plus a markup of 8 to 10 percent (the variance based on certain contingencies, including condition of the Vessel ultimately located). Accordingly, COMERCIALIZADORA TRANSPACIFICO received the First Installment from Open and proceeded to contact the account representative for Morgan Stanley telephonically in order to initiate the payment instructions for the First Installment. Luis Molina, the 99% beneficial owner of COMERCIALIZADORA TRANSPACIFICO, spoke to the Morgan Stanley representative over the phone and via email and written correspondence.

29. During the telephonic conversation, the Morgan Stanley account representative requested that Mr. Molina send the payment information for the Intended

Beneficiary in writing. Mr. Molina then sent an email to Morgan Stanley on June 18, 2016 advising Morgan Stanley of the desired transfer to the Intended Beneficiary. In that email, Mr. Molina attached an image titled "NAUTIKOS DATOS BANCARIOS", which image, as its title indicates, was supposed to contain the account information of the Intended Beneficiary. Enclosed as Exhibit B, is a copy of the email with the image. However, despite its title, the image inadvertently and mistakenly contained the Mistaken Beneficiary's information. As discussed in greater detail below, Mr. Molina was not aware of this error until it was later contacted in a telephonic call-back verifying the transaction.

30. On June 20, 2016, Mr. Molina and Morgan Stanley exchanged a series of emails wherein Morgan Stanley requested that Mr. Molina formally execute instructions for the transfer of the Funds, which instructions contained the information of the Mistaken Beneficiary. On June 21, 2016 and at Morgan Stanley's request, Mr. Molina executed written payment instructions for the Blocked Transfer which contained references to the Mistaken Beneficiary and Banco Transatlantico. Attached as Exhibit C is a copy of the payment instructions executed by Mr. Molina which contain incorrect references to the Mistaken Beneficiary and Banco Transatlantico. Mr. Molina unintentionally did not review the payment instructions in any detail before executing them.

31. Consistent with the security procedures for COMERCIALIZADORA TRANSPACIFICO's account with Morgan Stanley, on June 22, 2016, Mr. Molina received a call from Morgan Stanley seeking to verify the payment instructions delivered to Morgan Stanley on June 21, 2016. During the call, Mr. Molina realized that the

executed instructions contained the Mistaken Beneficiary's account information rather than the Intended Beneficiary's account information and communicated to Morgan Stanley that payment instruction was incorrect. During the call, Mr. Molina was told to resubmit the payment instructions with the correct information.

32. On June 23, 2016, Mr. Molina sent Morgan Stanley an email with the Intended Beneficiary's correct account information. Attached as Exhibit D is a copy of the payment instructions executed by Mr. Molina with the correct references to the Intended Beneficiary. Following a request for more information from Morgan Stanley relating to this transaction, on June 25, 2016, Mr. Molina resent the Intended Beneficiary's correct account information, executed transfer instructions and an executed agreement between COMERCIALIZADORA TRANSPACIFICO and the Intended Beneficiary corroborating the purchase of the Vessel. Attached as Exhibit E is a copy of this correspondence (which includes the referenced agreement with the Intended Beneficiary – in Spanish with English translation).

33. On June 30, 2016, Morgan Stanley called and notified Mr. Molina that the Funds had been blocked pursuant to OFAC regulations. Thereafter, on July 26, 2016, Morgan Stanley provided COMERCIALIZADORA TRANSPACIFICO with a written explanation for why the Blocked Transfer had been blocked and the Funds frozen, noting that the Funds were initially instructed "to be routed to or through a bank (Balboa Bank & Trust, Corp.) which [OFAC] has designated as a 'blocked person.'" Attached as Exhibit F is a copy of this correspondence.

34. After the Funds were blocked, the transaction to acquire the Vessel fell through and due to Mr. Molina's human error, COMERCIALIZADORA

TRANSPACIFICO remains liable to Open for the First Installment. In light of the foregoing, COMERCIALIZADORA TRANSPACIFICO engaged Holland & Knight to prepare and submit an application for a license to release the blocked Funds on its behalf (the "Application"). The Application and exhibits contained therein are incorporated in this complaint (paragraphs 4 and 5, and 16 – 37) and are attached to this complaint as Exhibit G.

**REQUEST FOR RELEASE OF BLOCKED FUNDS**

35. On September 22, 2016 COMERCIALIZADORA TRANSPACIFICO submitted the Application, through its counsel at Holland & Knight, to OFAC requesting the release of blocked funds.

36. The Application provided the following reasons, among other reasons, why the Blocked Transfer should be released:

a. The Blocked Transfer was the result of mistaken identity and human error. COMERCIALIZADORA TRANSPACIFICO inadvertently included the Mistaken Beneficiary's account information rather than the Intended Beneficiary's account information in its payment instructions and did not realize the mistake in its haste to execute the original payment instructions;

b. Upon becoming aware of the mistake in the telephonic call-back it received from Morgan Stanley, COMERCIALIZADORA TRANSPACIFICO took immediate steps to rectify the mistake, which, absent the OFAC-mandated blocking, would have resulted in the Funds being properly directed to the Intended Beneficiary;

c. COMERCIALIZADORA TRANSPACIFICO maintains no commercial relationship with the Mistaken Beneficiary and provided its payment information to Morgan Stanley due to an unintentional, human error;

d. Neither the Mistaken Beneficiary nor the Intended Beneficiary is a SDNT or directly or indirectly owned fifty percent (50%) or more in the aggregate by one or more blocked persons; and

e. COMERCIALIZADORA TRANSPACIFICO remains liable to Open for the First Installment that was never processed.

37. In light of the foregoing, COMERCIALIZADORA TRANSPACIFICO respectfully requests the unblocking of the $500,000 in funds.

38. On December 12, 2016, OFAC sent COMERCIALIZADORA TRANSPACIFICO a one page letter denying COMERCIALIZADORA TRANSPACIFICO's application. A copy of that denial is attached as Exhibit H.

## IRREPARABLE INJURY

39. OFAC's failure to render a rational decision has substantially harmed COMERCIALIZADORA TRANSPACIFICO and continues to do so as long as the funds remain blocked.

40. After the Funds were blocked, the transaction to acquire the Vessel fell through and COMERCIALIZADORA TRANSPACIFICO remains liable to Open for the Funds.

**Count I**
**Violation of the Foreign Narcotics Kingpin Designation Act ("FNKDA")**

41. COMERCIALIZADORA TRANSPACIFICO repeats and realleges each of the allegations in paragraphs 1 through 40 as if each were incorporated here in full.

42. The statute pursuant to which the Defendants have acted and are acting in this case is the Foreign Narcotics Kingpin Designation Act ("FNKDA"), 21 U.S.C. §§1901-1908. FNKDA was enacted on December 3, 1999, as Title VIII of the Intelligence Authorization Act for Fiscal Year 2000, Pub. L. No. 106-120, 113 Stat. 1606, (1999).

43. The intent of Congress in enacting the FNKDA, per the Conference Committee Report accompanying the FNKDA, was to only affect those who are "knowingly and willfully engaged in international narcotics trafficking." H.R. Conf. Rep. No. 106-457, 42-43, reprinted in 1999 U.S.C.C.A.N. 304, 313-14

44. Congress also made clear that the FNKDA is not intended in any way to "derogate from existing constitutional and statutory due process protections for those whose assets are blocked or seized pursuant to law." Id.

45. Defendants violated the FNKDA by failing to abide by Congressional intent when they enforced the FNKDA and refused to unblock COMERCIALIZADORA TRANSPACIFICO's funds.

46. COMERCIALIZADORA TRANSPACIFICO has demonstrated in its application to the Defendants that COMERCIALIZADORA TRANSPACIFICO was not knowingly and willfully engaged in international narcotics trafficking.

47. COMERCIALIZADORA TRANSPACIFICO's funds blocked by the Defendants in violation of the FNKDA must be unblocked.

**COUNT II**
**Violation of the Administrative Procedures Act**

48. COMERCIALIZADORA TRANSPACIFICO repeats and realleges each of the allegations in paragraphs 1 through 40 as if each were incorporated here in full.

49. OFAC's refusal to grant a license to COMERCIALIZADORA TRANSPACIFICO was (1) "arbitrary and capricious" under Section 706(2)(A); (2) "contrary to a constitutional right, power, privilege, or immunity" under Section 706(2)(B); (3) made in "excess of the agency's statutory authority" under Section 706(2)(C); (4) without "observance of procedure required by law" under Section 706(2)(D); and (5) "unwarranted by the facts to the extent they are subject to trial de novo" under Section 706(2)(F).

50. The Defendant failed to consider COMERCIALIZADORA TRANSPACIFICO's communications with Morgan Stanley regarding the inadvertent and mistaken wire transfer instructions.

51. The Defendant failed to provide a rational basis between the relevant facts and its decision within its denial letter of COMERCIALIZADORA TRANSPACIFICO's application for a license for the release of blocked funds.

52. COMERCIALIZADORA TRANSPACIFICO had no intent to transfer the funds to the mistaken beneficiary.

53. COMERCIALIZADORA TRANSPACIFICO corrected the mistaken instructions with Morgan Stanley prior to the mistaken instructions effect on the blocked funds.

54. The FNKDA regulations define transfer as:

> ... any actual or purported act or transaction, whether or not evidenced by writing, and whether or not done or performed within the United States, the **purpose, intent, or effect** of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property. Without limitation upon the foregoing, the term transfer includes the making, execution, or delivery of any assignment, power, conveyance, check, declaration, deed, deed of trust, power of attorney, power of appointment, bill of sale, mortgage, receipt, agreement, contract, certificate, gift, sale, affidavit, or statement; the making of any payment; ....

31 C.F.R. § 598.316 (emphasis added)

55. Defendants failed to consider the FAQ section of its own website which attempts to clarify the issue of wire transfer "payment instructions."

56. Under the FNKDA Sanctions FAQ #53:

> ... In the case of a wire transfer, the bank will be holding blocked property upon the receipt of **concrete instructions** from its customer to send the funds. ... The same logic applies to cases where the transaction would be required to be rejected under OFAC regulations. There is not technically a 'reject' item until the bank receives instructions from its customer to debit its account and send the funds. [01-15-15]

https://www.treasury.gov/resourcecenter/faqs/Sanctions/Pages/faq_compliance.aspx (emphasis added)

57. The inadvertent and mistaken instructions by COMERCIALIZADORA TRANSPACIFICO to Morgan Stanley regarding the wire transfer of funds to the Mistaken Beneficiary were not "concrete" as defined in FAQ #53 which is evidenced by the follow-up communications and correspondence between Morgan Stanley and Mr. Molina which occurred over the course of June 22, 2016 through June 25, 2016. If it was concrete, Morgan Stanley would not have procedurally had the follow-up communications.

58. Morgan Stanley and COMERCIALIZADORA TRANSPACIFICO addressed and corrected the mistaken and inadvertent instructions prior to Morgan Stanley's formal acceptance of COMERCIALIZADORA TRANSPACIFICO's wire transfer instructions.

59. Defendant failed to consider COMERCIALIZADORA TRANSPACIFICO's lack of intent to transact with a blocked party.

60. Defendant failed to consider COMERCIALIZADORA TRANSPACIFICO's less than "concrete" wire transfer instructions to Morgan Stanley regarding the Mistaken Beneficiary.

61. Defendant failed to consider relevant information and provide an adequate explanation for its refusal to grant a license.

62. On December 12, 2016, the Department of Treasury laconically denied COMERCIALIZADORA TRANSPACIFICO's request to release the blocked funds. A copy of OFAC's denial of the license application is attached as Exhibit H.

63. OFAC denied COMERCIALIZADORA TRANSPACIFICO's application in a one page letter that appears to be a boiler plate license application denial letter. The letter fails to respond to a single material fact surrounding COMERCIALIZADORA

TRANSPACIFICO's innocence as provided by COMERCIALIZADORA TRANSPACIFICO in its license application.

64. The Defendants have not met their obligations under the APA to establish a rational basis between the relevant facts and its decision regarding COMERCIALIZADORA TRANSPACIFICO's unblocking license application.

**COUNT III**
**Violation of Due Process of Law**

65. COMERCIALIZADORA TRANSPACIFICO repeats and realleges each of the allegations in paragraphs 1 through 40 as if each were incorporated here in full.

66. The Defendants have violated COMERCIALIZADORA TRANSPACIFICO's right to due process of law as guaranteed by the Fifth Amendment to the United States Constitution when they blocked COMERCIALIZADORA TRANSPACIFICO's access to the Funds and refused to issue a license to release the blocked funds to COMERCIALIZADORA TRANSPACIFICO upon its application to Defendants for that relief.

67. Congress clearly articulated, when it adopted the FNKDA, that it did not intend to "in any way to derogate from existing constitutional and statutory due process protections for those whose assets are blocked or seized pursuant to law." H.R. Conf. Rep. No. 106-457, 42-43, reprinted in 1999 U.S.C.C.A.N. 304, 313-14. Nevertheless, Defendants have done so.

68. There is no bona fide dispute here that COMERCIALIZADORA TRANSPACIFICO has, at all times material hereto, been an innocent victim, and not in any way guilty of drug smuggling or knowingly aiding such efforts, and the issue in

question is based on an inadvertent, human error, in attempting to make a legitimate commercial transaction in the ordinary course of commerce.

69. COMERCIALIZADORA TRANSPACIFICO is thus an innocent in this matter, and both the FNKDA and due process require that COMERCIALIZADORA TRANSPACIFICO's innocence matter. COMERCIALIZADORA TRANSPACIFICO was not offered a meaningful process at a meaningful time to demonstrate its innocence (if its innocence is even contested, which it should not be here), and to prove that COMERCIALIZADORA TRANSPACIFICO was not knowingly and willfully engaged in international narcotics trafficking.

70. Defendants violated COMERCIALIZADORA TRANSPACIFICO's Fifth Amendment due process rights by, *inter alia*, failing to provide COMERCIALIZADORA TRANSPACIFICOs with an adequate explanation for the basis of the block or a meaningful opportunity to challenge it and failing to provide for an administrative hearing, failing to provide a statement of reasons establishing a rational basis between the relevant facts and its decision regarding COMERCIALIZADORA TRANSPACIFICO's unblocking license application.

71. Because COMERCIALIZADORA TRANSPACIFICO is innocent of any wrongdoing the blocked funds should be promptly unblocked and returned to COMERCIALIZADORA TRANSPACIFICO.

**Relief Requested**

Wherefore, COMERCIALIZADORA TRANSPACIFICO, respectfully requests that this Court:

1. Take jurisdiction in this action;

2. Declare Defendants' actions as set forth herein to be unlawful for the reasons alleged;

3. Declare the Defendants' refusal to release the blocked funds, upon application for that relief by COMERCIALIZADORA TRANSPACIFICO, to be in violation of the FNKDA and due process of law;

4. Declare Defendants' action denying COMERCIALIZADORA TRANSPACIFICO a license or other administrative relief to be arbitrary and capricious, an abuse of discretion, and not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq;*

5. Remand the matter to OFAC with instructions that OFAC issue a license authorizing the immediate release of the blocked funds if COMERCIALIZADORA TRANSPACIFICO's innocence is not contested, and if it is contested, order Defendants to immediately determine that COMERCIALIZADORA TRANSPACIFICO is innocent;

6. Issue a preliminary and permanent injunction or mandamus pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling Defendants immediately issue COMERCIALIZADORA TRANSPACIFICO a license or other relief that entitles it to collect its $500,000.

7. Award COMERCIALIZADORA TRANSPACIFICO its suit money, costs and attorney's fees incurred as a result of bringing this action; and

8. Grant such other further relief as COMERCIALIZADORA TRANSPACIFICO may request and/or this Court deems just and proper under the circumstances.

9. A trial by jury is respectfully requested.

DATED this 16 day of May, 2017.

Respectfully submitted,

**WEISBERG KAINEN MARK, PL**
Attorneys for COMERCIALIZADORA TRANSPACIFICO
1401 Brickell Avenue, Suite 800
Miami, Florida 33131
Telephone: 305-374-5544
Facsimile: 305-358-8565
*qweisberg@wkm-law.com*

BY: */s/ Quinton L. Weisberg*
Quinton L. Weisberg, Esq.
Florida Bar No. 118499
Dennis G. Kainen, Esq.
Florida Bar No. 339393